IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS
OF FLORIDA, et al.,

    *Plaintiffs*,

v.      Case No. 4:23-cv-165-AW/MAF

CORD BYRD, in his official capacity as
Florida Secretary of State,

    *Defendant*.
_____/

# FLORIDA SECRETARY OF STATE'S MOTION TO DISMISS

Defendant, Florida Secretary of State Cord Byrd moves to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). Consistent with Local Rule 7.1(E), attached is a memorandum that explains the bases for the motion.

1

Dated: May 18, 2023

Respectfully submitted,

Bradley R. McVay (FBN 79034)
brad.mcvay@dos.myflorida.com
Joseph S. Van de Bogart (FBN 84764)
joseph.vandebogart@dos.myflorida.com
Ashley E. Davis (FBN 48302)
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
(850) 245-6536

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

## **CERTIFICATE OF SERVICE**

I certify that on May 18, 2023, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil.

## INTRODUCTION

Plaintiffs say that Florida's Voter Registration Application must detail all the eligibility requirements for felons who wish to register to vote; otherwise, Florida's Application violates the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq*. Not true. On the same day that the Plaintiffs filed their lawsuit, the U.S. Court of Appeals for the Eleventh Circuit decided *Thompson v. Alabama*, Case No. 21-10038. There, the Eleventh Circuit held that Alabama's voter registration application—which, like Florida's Application, provides a general description of eligibility criteria for convicted felons and a link to a state website where more detailed explanations for determining eligibility can be viewed—satisfied the NVRA. Given this controlling Eleventh Circuit precedent, this Court should dismiss the Complaint in its entirety because Florida's Application is indistinguishable in all material aspects from Alabama's application in *Thompson*. Separately, the Plaintiffs' 90-day notice letter was deficient.

## FACTUAL BACKGROUND

In 2018, Florida voters approved Amendment 4 to the Florida Constitution. That amendment permits individuals subject to "any disqualification from voting arising from a felony conviction" to have their voting rights restored "upon completion of all terms of sentence including parole or probation." Fla. Const., Art. VI, § 4(a). The amendment includes exceptions from the default rule for those "convicted of murder or a felony sexual offense." Fla. Const., Art. VI, § 4(a).

3

The Florida Supreme Court has made clear that "all terms of sentence" means all terms. Felons must thus satisfy *all* legal financial obligations associated with their convictions before they can become eligible to vote. *See Advisory Op. to the Governor re: Implementation of Amendment* 4, 288 So. 3d 1070, 1072 (Fla. 2020).

In 2019, the Florida Legislature also enacted SB 7066 to define certain terms and phrases. Among other things, that legislation defines the phrases "completion of all terms of sentence," "felony sexual offense," and "murder." *See* Fla. Stat. § 98.0751. For instance, "felony sexual offense" and "murder" encompass not only convictions that occurred within the State of Florida, but also "[a]ny similar offense committed in another jurisdiction which would be an offense" if committed in Florida. *Id.* at § 98.0751(b)(12), (c)(2). The Florida Division of Elections has further clarified that "[a] felony conviction in another state makes a person ineligible to vote in Florida only if the conviction would make the person ineligible to vote in the state where the person was convicted." *Constitutional Amendment 4/Felon Voting Rights*, Fla. Div. of Elections, https://dos.myflorida.com/elections/for-voters/voter-registration/constitutional-amendment-4felon-voting-rights/.

In addition, as part of SB 7066, Florida adopted a new voter registration application that reflected the statutory changes. The 2019 application required applicants to check one of three boxes attesting that the applicant either: "had never been convicted of a felony;" had been convicted of a felony but had their "voting rights" "restored by the Board of Executive Clemency;" or had been convicted of a

4

felony but had their "voting rights" "restored pursuant to s. 4, Art. VI of the State Constitution upon the completion of all terms of my sentence, including parole or probation"—*i.e.*, restored automatically as a result of the individual satisfying the terms of Amendment 4. *Jones v. DeSantis*, 462 F. Supp. 3d 1196, 1244 (N.D. Fla. 2020) (quoting Fla. Stat. § 97.052(2)(t) (2019)).

Several of the same Plaintiffs who bring this suit challenged the 2019 application immediately after its enactment, arguing that the 2019 application violated the NVRA. Compl. ¶ 97. This Court agreed that the 2019 application "r[a]n[] afoul of the NVRA's mandate that a voter registration form require only such identifying and other information 'as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process.'" *Jones*, 462 F. Supp. 3d at 1243-44.

The State did not appeal this Court's ruling with respect to the NVRA claim. Instead, it retired the invalidated 2019 registration form and reverted to the one it had used without issue since 2013 and regarding which this Court said that "[t]he State ha[d] tendered no legitimate reason to dispense"—*i.e.*, Florida's Application now challenged here. *Id.* at 1245.

Plaintiffs now allege that this application violates the NVRA too, arguing that it lacks the required "statement that . . . specifies each eligibility requirement (including citizenship)." Compl. ¶¶ 4-5. As explained in greater detail below, Plaintiffs' argument relies on a misreading of the federal statute and conflicts with controlling precedent.

5

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must allege facts sufficient to establish this Court's subject-matter jurisdiction. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924-25 (11th Cir. 2020) (en banc) (citations omitted); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The complaint must also "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "factual content" that will support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facts that are "merely consistent with a defendant's liability" isn't enough because such pleadings "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" either. *Id.* And while Plaintiffs' well-pled factual allegations are accepted as true, allegations in the form of legal conclusions are insufficient under Rule 12(b)(6) motions. *See Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295-96 (11th Cir. 2021).

## ARGUMENT

Plaintiffs advance a single claim in their Complaint: Florida's Application violates the NVRA because it does not enumerate detailed eligibility requirements for applicants who have previously been convicted of felonies. But controlling precedent from the Eleventh Circuit forecloses that argument. Dismissal under Rule 12(b)(6) is therefore appropriate. Separately, the 90-day notice letter provided by Plaintiffs is deficient.

## I. Controlling Eleventh Circuit Precedent Requires Dismissal of Plaintiffs' Claim under the NVRA.

**A.** On April 26, 2023, the same day that Plaintiffs filed their Complaint, a three-judge panel of the Eleventh Circuit released its decision in *Thompson et al. v. Alabama et al.*, No. 21-10038 (11th Cir.). Like Plaintiffs here, the Appellants in *Thompson* had challenged Alabama's mail voting registration form as a violation of the NVRA. 2023 U.S. App. LEXIS 10186, at *2-3. Under the NVRA, a state mail voter registration form must *inter alia* "include a statement that . . . specifies each eligibility requirement (including citizenship)." 52 U.S.C. § 20508(b)(2)(A). Both the district court and the three-judge panel disagreed with Appellants, holding that the form complied with this notice requirement. *Jones*, 2023 U.S. App. LEXIS 10186, * 2-3.

The challenged Alabama form included language notifying prospective applicants that "[t]o register in Alabama you must: . . . not have been convicted of a felony involving moral turpitude (or have had [y]our civil and political rights restored). The list of moral turpitude felonies is available on the Secretary of State web site at: sos.alabama.gov/mtfelonies." *Id.* at *17. Appellants argued that this notice was insufficient because the form only "inform[ed] registrants that felonies involving moral turpitude are disqualifying and that registrants can access the list of disqualifying felonies by following a specified link," but that it did "not explicitly list all the disqualifying felonies under Alabama law." *Id.* at *45. In other words, Appellants believed that "a state that disqualifies voters for some felonies but not others can only

7

sufficiently specify its eligibility requirements on its mail voting form by listing each disqualifying felony." *Id.* at *45-46.

The three-judge panel rejected the *Thompson* Appellants' overly broad reading of the NVRA. Following Appellants' argument to its inevitable conclusion, the panel noted that "Appellants' interpretation would require Alabama to list every state, federal, and foreign felony involving moral turpitude to sufficiently specify disqualifying felonies under Alabama law." *Id.* (quoting *Thompson v. Merrill*, 505 F. Supp. 3d 1239, 1271 (M.D. Ala. 2020)). Any registration form that contained enough detailed information to satisfy the Appellants "would be of monstrous size." *Id.* Not only would the State have to "attach a copy of each state, federal, and foreign criminal code to its voting form," but the curation of relevant statutes would have to continue in perpetuity; according to the panel, "any time any state, federal, or foreign government amended their criminal code, Alabama would have to update its list of disqualifying felonies and print anew its prodigious voter registration forms." *Id.* at *47.

Contrary to Appellants' argument, the Eleventh Circuit recognized that, "[b]oiled down" to its essence, Section "20508(b)(2)(A) is a notice statute enacted for the *convenience* of voting registrants." *Id.* at *48 (emphasis added). In other words, the NVRA requires States to put applicants on notice of a State's unique eligibility requirements, but it does not demand, on the face of a voter registration application, an exhaustive explanation of every legal particular underlying each eligibility requirement.

8

**B.** Florida's Application similarly complies with the NVRA. It states plainly that if a prospective applicant "ha[s] been convicted of a felony . . . you cannot register until your right has been restored." Compl. ¶ 7. A few lines below that statement, the Application includes a bold heading in larger typeface that says "Questions?", beneath which the Application provides links to a list of county Supervisors of Elections offices and the website of the Florida Division of Elections.[1] If one clicks on the second link, they are immediately directed to the homepage of the Florida Division of Elections. On this page, under the prominent heading "Voter Information," the very first subheading reads as follows: "Amendment 4: Standards Governing Eligibility to Vote After a Felony Conviction." If one clicks on this subheading, they are redirected to a page laying out Florida's detailed requirements for restoring one's right to vote after a felony conviction. For instance, this page provides the exact information sought by Plaintiffs—namely, the standards governing voting eligibility for (1) persons who have been convicted of murder or felony sexual offenses; (2) persons who have been convicted of other felonies in Florida and who have completed all terms of sentence; and (3) persons who have been convicted of felonies in other states who seek to register to vote in Florida. The page also provides extensive guidance to individuals seeking to

---

[1] The two links provided on the Application are: http://dos.myflorida.com/elections/contacts/supervisor-of-elections and http://dos.myflorida.com/elections.

9

determine whether they still owe fines, fees, costs, and restitution as part of their court-ordered sentences, and if so, how much is still owed.

For Plaintiffs, this is two clicks too many. They argue that by notifying prospective applicants who have been previously convicted of felonies that they are ineligible to register "until your right has been restored," and then asking applicants to check a box affirming that "I am not a convicted felon, or if I am, my right to vote has been restored," the State is setting returning citizens up for failure (or even criminal prosecution). Compl. ¶¶ 7-8, 28-29. Plaintiffs assert that "the Application does not provide any explanation as to when an individual's 'right to vote has been restored,' or any guidance for a voter seeking to make that determination," *id.* ¶ 9, but this both mistakes the purpose of the NVRA requirement and misstates the facts. The NVRA does not require a detailed explanation of every eligibility requirement on the face of a mail voter registration form. As the Eleventh Circuit made clear, such form need only provide "sufficient notice." *Thompson*, 2023 U.S. App. LEXIS, at *48. Florida's Application fully complies with the requirements of the NVRA by informing persons previously convicted of felonies that they might not be eligible to vote unless certain conditions are met and providing a link to a state website where prospective applicants can instantly find answers to all their questions about voter eligibility.

As the Eleventh Circuit panel explained in *Thompson*, "[c]ourts should avoid slicing a single word from a sentence, mounting it on a definitional slide, and putting it under a microscope in an attempt to discern the meaning of an entire statutory

10

provision." *Id.* at *47 (quoting *Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1267 (11th Cir. 2006)). But that is precisely what Plaintiffs urge this Court to do here with the word "specify." Plaintiffs propose several additional statements that they claim would satisfy the NVRA's mandate to "specif[y] each eligibility requirement," mentioning statements noting that "rights are automatically restored upon completion of all terms of their sentence" for most felony convictions but that "returning citizens convicted of murder or felony sexual offenses in Florida can *only* have their rights restored through the clemency process." Compl. ¶ 10. While these suggestions may reflect an accurate understanding of Florida's voter eligibility requirements, they exhibit a flawed reading of the federal statute under which Plaintiffs bring their challenge.

Florida's Application already fulfills the mandate of the NVRA by including a statement "specif[ying] each eligibility requirement (including citizenship)." 52 U.S.C. § 20508(b)(2)(A). That statement appears at the very top of the Application and specifies four discrete eligibility requirements: (1) U.S. citizenship; (2) Florida residence; (3) minimum age; and (4) either lack of felony conviction or voting rights restoration. This reading of federal law is supported by the text of the NVRA itself, which mentions "citizenship" as one of the eligibility requirements that must be enumerated on any state voter registration form. *Id.* But "citizenship" is itself a capacious concept that is susceptible to multiple meanings; after all, a person may be a natural-born citizen *or* a naturalized citizen (or even a dual citizen of multiple countries) and still be eligible to vote. Nevertheless, the NVRA does not require state voter registration forms to delve

11

into the many permutations of what constitutes valid "citizenship"; rather, it is sufficient that such forms "provide[] sufficient notice" of a particular eligibility requirement "and provid[e] an easily accessible link whereby voters . . . can determine their voter eligibility." *Thompson*, 2023 U.S. App. LEXIS 10186, at *48. Florida already does that.

Plaintiffs make much of the fact that Florida's Application was originally adopted in 2013, several years before Amendment 4 and SB 7066 were enacted. Compl. ¶¶ 105-07. Of course, the State in 2019 *did* adopt a new registration form specifically accounting for those changes in state law, but it was invalidated because of a lawsuit brought by some of the same Plaintiffs that initiated this case. *Id.* ¶¶ 97-100. In the wake of that earlier decision, the State reverted to using a registration form that satisfied federal law: The Florida Application that had been used without issue since 2013. After all, the same district court that invalidated the 2019 registration form spoke positively of the 2013 Application, noting that it asked prospective applicants to affirm "a single relevant statement," rather than be confronted with multiple checkboxes, and therefore "*provided all the information that needed to be on the form.*" *Jones*, 462 F. Supp. 3d at 1244 (emphasis added). And, of course, the website the form refers to has been updated.

According to Plaintiffs, however, the State has yet to produce a registration form that complies with the NVRA. They allege that the 2019 form overwhelmed prospective applicants with too much information, while the 2013 Application fails to provide enough. They demand that the State produce, in essence, a "Goldilocks" voter registration form that provides *just the right amount* of information concerning voter

12

eligibility—even though it is not clear that Plaintiffs accept the premises of their own argument concerning what constitutes the correct amount of information, as described in detail below. Such a form does not exist. More importantly, the Eleventh Circuit has now said that the NVRA doesn't require such a form.

## II.   Accepting Plaintiffs' Argument Would Undermine the Purpose of the NVRA and Lead to Absurd Results.

Although Plaintiffs urge this Court to mandate that the State of Florida provide additional information about its felon re-enfranchisement rules on the voter form itself (rather than on the state website linked therein, where such information is already provided to the public), they sidestep the implications of their argument for all those portions of the application that they *do not* challenge in this lawsuit. After all, the absence of a prior felony conviction (or post-conviction rights restoration) is not Florida's *sole* voter eligibility requirement. As explained above, Florida also imposes citizenship, residence, and minimum age requirements that are each adequately noticed at the top of the Application. Applying Plaintiffs' logic, Florida's descriptions of these other eligibility criteria would violate the NVRA without some exhaustive explanation.

Perhaps sensing the need to identify some limiting principle to buttress their argument, Plaintiffs assure this Court that these other eligibility requirements do not exhibit the kind of "vague phrasing" that Plaintiffs find so problematic in the felony notice provision. Compl. ¶ 149. But that is not the case. For instance, "residence" is hardly a self-defining concept in law. That is particularly true in Florida, where many

13

individuals only reside for portions of the calendar year. Although the State provides a detailed explanation of what "residence" means in the context of voter eligibility on the Division of Elections website[2] (an explanation, it should be noted, that itself runs for two-and-a-half pages), it does not do so on the face of the one-page Florida Application.

Fortunately, it is not necessary to go down the road of turning a form into a compendium because, under controlling precedent, "informing registrants that persons convicted of disqualifying felonies are not eligible to vote and providing an easily accessible link whereby voters convicted of felonies can determine their voter eligibility" provides applicants with "sufficient notice" that "complie[s] with the requirements of § 20508(b)(2)(A)." *Thompson*, 2023 U.S. App. LEXIS 10186, at *48.

In sum, as the Eleventh Circuit explained, courts should always keep the purpose of a given statute in mind, and "refrain from interpreting [the] statute in a way that produces a result that is not just unwise but is clearly absurd." *Id.* at *47 (quoting *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1091 (11th Cir. 2018)). The purpose served by Section 20508(b)(2)(A) is clear: It is "a notice statute *enacted for the convenience of voting registrants.*" *Id.* at *48 (emphasis added). Florida has fulfilled the NVRA's statutory purpose by producing a short, one-page voter registration form that is easy for applicants to read and digest. The entire point of reverting to the simple 2013

---

[2] Fla. Div. of Elections, *Voter Residency in Florida* (July 2018) available at: https://soe.dos.state.fl.us/pdf/DE%20Guide%200003-%20Voter%20Residency%20Updated%2007-2018%20Final.pdf.

14

Application after the more complicated 2019 version was struck down by this Court was to make the registration process *easier* for voters.

For the vast majority of prospective Florida voters, the Application provides all the information they need to successfully register. For those who require more detailed information to assess their eligibility, Florida's Application provides a link to the Division of Elections website. It is highly unlikely that providing the detailed legal explanations that Plaintiffs demand on the face of the Application will enhance convenience for *any* Florida voters, including for persons previously convicted of felonies. Adopting Plaintiffs' preferred reading of the federal statute would not only flout controlling precedent in this Circuit, *see Thompson*, 2023 U.S. App. LEXIS 10186, at *45-48, but it would make it impossible for Florida to produce a one-page voter registration form that complies with the NVRA; if that is what the law demands, then the Secretary may as well mail prospective applicants a complete copy of the Florida Statutes and wish them luck. This absurd result can, and should be, avoided.

### III.   Plaintiffs' 90-Day Notice Letter is Deficient.

Plaintiffs' Complaint is deficient for yet another reason. Before bringing a lawsuit under the NVRA, a person must first "provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). "[N]otice [is] sufficient when it (1) sets forth the reasons that a defendant purportedly failed to comply with the NVRA, and (2) *clearly communicates that a person* is asserting a violation of the NVRA and *intends to commence litigation* if the violation is not timely addressed."

15

*Pub. Interest Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 457 (M.D. Pa. 2019) (emphasis added). Put another way, "courts have found that an NVRA notice is sufficient if it 'sets forth the reasons for [the] conclusion' that a defendant failed to comply with the NVRA, and, when 'read as a whole, [it] *makes it clear that [the plaintiff]* is asserting a violation of the NVRA and *plans to initiate litigation* if its concerns are not addressed in a timely manner." *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1348 (N.D. Ga. 2016) (quoting *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 922 (S.D. Ind. 2012)) (emphasis added). In short, a NVRA-compliant notice must include a specific threat to sue. The failure to comply with the NVRA's notice requirement results in a lack of standing to bring a lawsuit under the NVRA. *See Project Vote, Inc.*, 208 F. Supp. 3d at 1347 ("No standing is therefore conferred if no proper notice is given ….").

Plaintiffs' January 13, 2023, letter to Secretary Byrd does not contain a statement saying that Plaintiffs would sue Florida if the alleged violations identified in the notice were not corrected. *See* Compl. Ex. 2. The letter explains at length why Plaintiffs believe Florida's Application violates NVRA by not adequately informing applicants—in particular, persons previously convicted of felonies—of voter eligibility requirements; lists the actions that Plaintiffs believe Florida needs to take to comply with NVRA; seeks assurances that Secretary Byrd will take those actions; and offers assistance to the Secretary in developing and implementing a plan to address the alleged deficiencies. Yet nowhere in the five-page letter is a clear statement indicating that Plaintiffs would

16

commence litigation if Secretary Byrd declined to take the recommended steps. Plaintiffs' letter, therefore, failed to comply with the NVRA's notice requirement.

Because they did not meet the condition precedent for bringing a cause of action under the NVRA, Plaintiffs lack standing to sue. Accordingly, Plaintiffs' complaint should be dismissed for want of jurisdiction.

## CONCLUSION

Plaintiffs have brought a single claim alleging that Florida's Application violates the NVRA. Controlling Eleventh Circuit precedent makes clear, however, that the NVRA only requires States to put prospective applicants on notice of voting eligibility requirements but does not mandate detailed explanations of all criteria on the face of the application itself. Because Florida's Application puts all prospective applicants (including persons who have previously been convicted of felonies) on notice of the State's eligibility requirements and provides a link to a state website where applicants can locate more detailed information if they need it, the form is fully compliant with Section 20508(b)(2)(A) of the NVRA. Therefore, this Court should dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6). The 90-day notice letter required under the NVRA is also deficient.

Dated: May 18, 2023                              Respectfully submitted,

Bradley R. McVay (FBN 79034)
brad.mcvay@dos.myflorida.com
Joseph S. Van de Bogart (FBN 84764)
joseph.vandebogart@dos.myflorida.com
Ashley E. Davis (FBN 48302)
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
(850) 245-6536

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

## **LOCAL RULE 7.1(F) CERTIFICATION**

I certify that this memorandum contains 3,828 words, excluding the case style and certifications; and it complies with the size and font requirements in the local rules.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## **CERTIFICATE OF SERVICE**

I certify that on May 18, 2023, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil.