## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF
FLORIDA, INC., *et al.*,

     *Plaintiffs*,

v.

    Case No. 4:23-cv-165-AW-MAF

CORD BYRD, in his official capacity
as Florida Secretary of State,

     *Defendant*.

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

Defendant's two arguments in support of dismissal are unavailing, and the Court should deny his motion to dismiss Plaintiffs' claim.

*First*, *Thompson v. Alabama*, 65 F.4th 1288 (11th Cir. 2023),[1] does not decide this case in Defendant's favor. *Thompson* held that Alabama's voter-registration form satisfied the National Voter Registration Act (NVRA) by specifying that applicants must not have been convicted of a "disqualifying felony" without listing every disqualifying offense. 65 F.4th at 1308-09. *Thompson* stands for the proposition that when voting eligibility depends on the crime of conviction, the NVRA is satisfied when a voter-registration form notifies applicants that eligibility depends on the type

---

[1] Unless otherwise noted, all internal quotations are omitted and emphasis is added.

of offense. Florida's mail-in voter-registration application (the Application) fails to do even this. The language Plaintiffs challenge—that returning citizens are ineligible until their "right to vote [is] restored"—does not specify any eligibility requirement but merely signals that there *are* eligibility requirements for people with felony convictions. Indeed, Defendant acknowledges that returning citizens are not eligible to vote "unless certain conditions are met." Mot. to Dismiss, ECF No. 24 (MTD) at 10. Yet the Application *nowhere* provides notice that such conditions exist or indicates what they are. The stakes of this absence are high: dozens of returning citizens have been prosecuted after registering to vote based on a good-faith belief in their eligibility. Complaint ¶ 111-122, ECF No. 1 (Compl.).

Defendant claims—incorrectly—that the Application is "indistinguishable in all material aspects" from Alabama's voter-registration application upheld in *Thompson*, so Plaintiffs' Complaint cannot state a claim for relief under the NVRA. MTD at 3. But Florida's eligibility requirements, its Application, and Plaintiffs' claim in this case fundamentally differ from those at stake in *Thompson*. The only similarity to *Thompson* that Defendant identifies is that the Florida Application contains a hyperlink to additional information that purportedly specifies eligibility requirements. But the Eleventh Circuit did not hold that providing a link on an application is *per se* sufficient to satisfy the NVRA. To the contrary, the court in *Thompson* undertook a fact-specific inquiry—on a full summary-judgment record—to

2

determine only whether the NVRA required Alabama to list the state's disqualifying felonies involving moral turpitude on its voter-registration form. Similarly, as discussed below, whether the Application sufficiently "informs" voters of Florida's eligibility requirements raises significant factual issues that cannot be resolved without the benefit of discovery.

*Second*, Defendant's novel argument that Plaintiffs did not comply with the NVRA's notice provisions is wrong. The NVRA does not require that a notice letter contain magic words, and no court has embraced Defendant's position that an NVRA notice letter is defective if it does not include an explicit threat to sue. The NVRA requires only that the letter notify the relevant state elections official of the violation. Plaintiffs' notice letter did just that. Thus, Defendant does not—and cannot—contest that Plaintiffs' letter provided adequate notice. This Court should reject Defendant's unfounded argument and deny the motion to dismiss.

## STATEMENT OF FACTS

In the NVRA, Congress established thresholds and standards to govern states' provision of voter-registration information to prospective voters in federal elections. Compl. ¶ 2. To ensure that only eligible voters register to vote, Congress specified that states—in their administration of mail-in registration, DMV-based registration, and agency registration for federal elections—must "inform applicants . . . of voter eligibility requirements" and the penalties attendant to the false submission of voter-

3

registration information. 52 U.S.C. § 20507(a)(5)(A)-(B). The NVRA separately requires that state mail-in voter-registration forms used for federal elections "include a statement that [] specifies each eligibility requirement" that prospective voters must meet. *Id.* § 20508(b)(2)(a).

The State of Florida's mail-in voter-registration application leaves many prospective voters—particularly those with prior felony convictions—unable to make an informed decision about their eligibility. Compl. ¶ 10. Florida's eligibility requirements for returning citizens differ depending on the crime, terms of sentence, and state of conviction. But the Application says nothing about these requirements. Making matters worse, Florida agencies have proven unable to timely verify the eligibility of voters. *Id.* ¶¶ 105-110. The Application exacerbates the widespread confusion about eligibility criteria under Florida's convoluted regime for applicants with prior felony convictions. Florida has chosen to withhold the information that its citizens need to determine their eligibility, *id.* ¶¶ 109, 128, and it has exploited this state-created uncertainty by investigating and prosecuting individuals who believed in good faith in their eligibility to vote, *id.* ¶¶ 111-122. In some instances, Florida even arrested individuals who sought and received confirmation of their eligibility from Florida government officials. *Id.* ¶¶ 132-133.

Plaintiffs—nonprofit, nonpartisan organizations that assist eligible Floridians with past convictions in registering to vote—seek to protect and advance the interests

of the community that the Application fails to protect. They also seek to prevent their own volunteers from potentially putting themselves at risk of future prosecution, at a time when Florida prosecutors are reportedly investigating voter-registration groups and their members for allegedly registering ineligible returning citizens. Compl. ¶¶ 31-70.

On January 13, 2023, Plaintiffs served notice of Florida's NVRA violations on Defendant. *Id.* ¶¶ 193-194; Compl., Ex. 2, ECF No. 1-2. Defendant waited until the day before the statutory 90-day notice period expired to respond, and that letter did not address any of the violations or propose a remedy. *Id.* ¶¶ 193-194; Compl., Ex. 3, ECF No. 1-3. Plaintiffs filed suit on April 26, 2023, 103 days after serving notice of Florida's NVRA violations on Defendant.

## STANDARD OF REVIEW

To satisfy Federal Rule of Civil Procedure 8 and overcome a Rule 12(b)(6) motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The complaint "need not contain 'detailed factual allegations'"; the allegations need only "'raise a right to relief above the speculative level.'" *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"Asking for plausible grounds does not impose a probability requirement at

the pleading stage," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 545, 556 (cleaned up). "In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).[2]

---

[2] Defendant invokes Federal Rule of Civil Procedure 12(b)(1), MTD at 1, but none of his arguments implicate the Court's subject-matter jurisdiction. Rather, Defendant conflates statutory standing under the NVRA's pre-suit notice provision, *see infra* Section II, with Article III standing under the Constitution. *See generally Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (explaining that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case") (emphasis omitted); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515, 516 (2006) (clarifying that unless Congress "clearly states" that a limitation on a statute's scope is jurisdictional, the limitation should be treated as nonjurisdictional); *see also Am. C.R. Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 794 n.9 (W.D. Tex. 2015) (explaining that "[t]he NVRA notice provision is nonjurisdictional" and applying Rule 12(b)(6) to allegedly deficient notice); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1346, 1347-48 (N.D. Ga. 2016) (applying Rule 12(b)(6) to analyze and deny motion to dismiss based on allegedly deficient NVRA notice). *But see Bellitto v. Snipes*, 221 F. Supp. 3d 1354, 1362 (S.D. Fla. 2016) (declining to distinguish between statutory standing and constitutional standing and applying Rule 12(b)(1) to allegedly deficient NVRA notice).

## ARGUMENT

### I.   The Complaint States a Claim Under the NVRA.

Under the NVRA, a state's mail-in voter-registration application must contain "a statement that . . . specifies each eligibility requirement."[3] To satisfy this provision, an application must provide "sufficient notice" to registrants of those requirements. *Thompson*, 65 F.4th at 1309. The application must also "inform applicants . . . of . . . voter eligibility requirements."[4] Plaintiffs allege that Florida's Application does not meet these requirements because it does not specify or inform applicants that the eligibility requirements differ depending upon a returning citizen's class of offense, state of conviction, and sentence received and served. *See generally* Compl. ¶ 10.

Because different states have different eligibility requirements and different application forms, a given application's compliance with the NVRA depends on the state-specific eligibility requirements, the content of the application at issue, and

---

[3] 52 U.S.C. §§ 20505(a)(2) (requiring that state mail-in voter-registration forms satisfy the criteria in Section 20508(b)); 20508(b)(2)(A) (requiring that federal mail-in voter-registration forms "include a statement that specifies each eligibility requirement").

[4] 52 U.S.C. §§ 20505(a)(2) (requiring that state mail-in voter-registration forms satisfy the criteria in Section 20508(b)); 20508(b)(4)(i) (requiring voter-registration forms to "include . . . the information required in section 20507(a)(5)(A) and (B)"); 20507(a)(5) (requiring states to "inform applicants . . . of voter eligibility requirements").

whether the latter adequately informs applicants in the state. Defendant's motion ignores that fact-specific inquiry and relies entirely on *Thompson*—a recent decision that addressed a *different* application in a *different* state with *different* eligibility requirements, and a *different* factual setting. This case is about Florida's Application and eligibility requirements. And the Complaint plausibly alleges that Florida's Application fails to specify and inform potential voters of those requirements in violation of the NVRA.

## A. *Thompson* Involved Different Voter-Eligibility Requirements and Different Claims.

The core premise of Defendant's motion is that Florida's Application is "indistinguishable in all material aspects" from the Alabama form at issue in *Thompson*. MTD at 3. Even if that were true—it is not, *see infra* Section I.B.—*Thompson* would not foreclose Plaintiffs' challenge. Florida's eligibility scheme differs from Alabama's, and Plaintiffs' NVRA claim differs from the one that the *Thompson* plaintiffs raised.

*First*, in *Thompson*, the plaintiffs' NVRA claim challenged only Alabama's failure to specify on the face of its application exactly those state-law felony offenses that disqualified prospective voters. Under Alabama's voter-eligibility scheme, a person convicted of a felony involving "moral turpitude" cannot vote unless she receives a pardon or obtains a restoration of civil rights by applying for, and receiving, a Certificate of Eligibility to Register to Vote (CERV). *See Thompson v. Merrill*, 505

8

F. Supp. 3d 1239, 1251-53 (M.D. Ala. 2020). The Alabama application states that, to register to vote, one must not "have been convicted of a disqualifying felony, or if you have been convicted, you must have had your civil rights restored." *Id.* It also requires the applicant to declare: "I am not barred from voting by reason of a disqualifying felony conviction (The list of disqualifying felonies is available on the Secretary of State's web site at: sos.alabama.gov/mtfelonies)." *Id.*

The *Thompson* plaintiffs claimed that Alabama's voter-registration application failed to adequately specify each voter-eligibility requirement because it did "not explicitly list all the disqualifying felonies under Alabama law"—more than 60 crimes in total, not including disqualifying felonies under federal law and the laws of other states. 65 F.4th at 1308. The district court and the Eleventh Circuit held that requiring Alabama to list all disqualifying felonies would result in an application of "monstrous size"; amount to "ask[ing] Alabama to attach a copy of each state, federal, and foreign criminal code to its voting form"; and force the state to update the form each time those codes changed. *Id.*

Here, by contrast, Plaintiffs challenge the Florida Application for failing to specify or inform applicants of the multiple eligibility requirements for returning citizens. In Florida there are three different eligibility requirements that apply to citizens convicted of felonies. *See generally* Compl. ¶¶ 10, 168-179. For persons convicted of statutorily enumerated murder or felony sexual offenses in Florida, their

rights can only be restored through the clemency process. *Id.* ¶¶ 170-171. For persons convicted of other felony offenses in Florida, the State automatically restores their rights upon completion of all the terms of their sentence, including probation, parole, or community control and payment of certain legal financial obligations (LFOs). *Id.* ¶¶ 172-174. And for persons convicted of out-of-state felonies, their eligibility to vote in Florida depends upon their eligibility to vote in the state of conviction. *Id.* ¶¶ 175-179; *see also* MTD at 4 (quoting the Florida Division of Elections website). The Application mentions none of these requirements. Instead, it presents a lone conclusory statement: those "convicted of a felony . . . cannot register until [their] right to vote is restored." Compl., Ex. 1, ECF No. 1-1.

Because the Application does not "specify" or "inform" applicants of *any* of the three eligibility requirements for those with felony convictions—much less "each" of them—it violates the NVRA. *See* 52 U.S.C. §§ 20505(a)(2), 20507(a)(5). The NVRA does not define "specify." *See* 52 U.S.C. § 20502. Absent a statutory definition, courts "look to the common usage of words for their meaning" and "often turn to dictionary definitions for guidance." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222-23 (11th Cir. 2001). "Specify" means "to mention specifically; to state in full and explicit terms; to point out; to tell or state precisely or in detail; to particularize; or to distinguish by words one thing from another." BLACK'S LAW DICTIONARY (6th ed. 1990); *see also Kucana v. Holder*, 558 U.S. 233, 243 n.10

(2010) (quoting WEBSTER'S NEW COLLEGIATE DICTIONARY 1116 (1974)) ("'[S]pec-ify' means 'to name or state explicitly or in detail.'"); *A Flock of Seagirls LLC v. Walton Cty. Fla.*, 7 F.4th 1072, 1077 (11th Cir. 2021) (quoting WEBSTER'S THIRD INTERNATIONAL DICTIONARY 2187 (1961)) ("[S]pecify" means "to mention or name in a[n] . . . explicit manner."). As Defendant's motion acknowledges, the Applica-tion does not (i) "mention specifically" that voting rights can be restored in different ways for persons with different types of felony convictions and sentences; (ii) state in "full and explicit terms" the different eligibility requirements; (iii) "particularize" the requirements for each category of conviction or sentence; or (iv) "distinguish by words one thing from another"—*i.e.*, the different requirements applicable to per-sons convicted of murder or sexual offenses versus other offenses versus out-of-state offenses. *See* MTD at 11; *see also* Compl. ¶¶ 10, 168-177.

*Second*, *Thompson* does not suggest that the text of Florida's Application, which is different than Alabama's, adequately "specifies" and "informs" voters of Florida's complex set of requirements for returning citizens. Alabama's form speci-fies the eligibility requirement at issue in *Thompson*—not having been convicted of a "disqualifying felony"—and refers applicants to the "list" of disqualifying felo-nies. 505 F. Supp. 3d at 1251-52. Florida's Application, by contrast, gives no notice whatsoever that there *are* different categories of felony offenses, each of which dic-tates a different path to having one's "right to vote . . . restored."

Moreover, while Alabama maintains a complex set of rules governing how (if at all) individuals with criminal convictions can become eligible to vote,[5] there is a process—separate from voter registration—for returning citizens to determine whether they meet the criteria for rights restoration, and in turn, eligibility to vote: applying to the Board of Pardons for a pardon, *see* Ala. Code § 15-22-36, or a CERV, *see* Ala. Code § 15-22-36.1. Alabama, unlike Florida, does not automatically restore voting rights for *any* cohort convicted of a disqualifying felony; *only* the Alabama Board of Pardons can do so. *See* Ala. Code § 17-3-31. For Alabama citizens disenfranchised by felony convictions, the receipt of a CERV or a pardon conclusively restores their voting rights and offers them certainty about eligibility. *See* Ala. Code § 15-22-36.1 (requiring the Board of Pardons and Paroles to verify that an applicant has fulfilled each eligibility requirement by conducting an investigation before granting a CERV); Ala. Code § 15-22-36 (requiring a pardon that is restoring someone's civil rights to "specifically express[]" that it has done so).

Not so in Florida, where there is no CERV or analogue that individuals with felony convictions can obtain to ensure their compliance with the State's eligibility

---

[5] *See, e.g.*, Ala. Code § 15-22-36.1(g) (excepting certain types of offenses from CERV eligibility); Ala. Code § 15-22-36(a) (excepting certain types of offenses from pardon eligibility).

requirements.[6] In fact, Florida sends voter information cards to newly registered voters *regardless* of eligibility—yet another source of confusion among prospective voters. Compl. ¶¶ 126, 129-130, 178-179. Florida has attempted to shift the burden to citizens disenfranchised by felony convictions to navigate its convoluted eligibility requirements at the time of registration. At the same time, Florida officials have adopted a policy of investigating, arresting, and prosecuting returning citizens for good-faith mistakes about their eligibility. Compl. ¶¶ 111-143. Florida is also reportedly investigating third-party voter registration organizations and their members for allegedly registering ineligible returning citizens to vote. Compl. ¶¶ 48-50. Yet the Application's vague reference to whether one's "right to vote has been restored"

---

[6] In some circumstances, Florida's advisory opinion process can provide applicants some eligibility information. But Florida law does not specify a timeframe for when the Division of Elections must provide an advisory opinion. *See Jones v. Governor of Fla.*, 975 F.3d 1016, 1094 (11th Cir. 2020) (Jordan, J., dissenting) (citing Fla. Stat. § 106.23(2)). And even applicants who receive a timely response cannot rely on them definitively because an advisory opinion, if wrong, might not serve as a shield from prosecution. *See Jones v. DeSantis*, 462 F. Supp. 3d 1196, 1241-42 (N.D. Fla. 2020) (deeming it "not at all clear" that an individual who acts in accordance with an advisory opinion is immune from prosecution). In some circumstances, the process raises more questions than answers about eligibility. *See Advisory Opinions by Year*, FLA. DIV. OF ELECTIONS, https://dos.myflorida.com/elections/laws-rules/advisory-opinions/advisory-opinions-by-year/ (stating within each advisory opinion that the Division of Elections "does not opine as to whether any other convictions [of the applicant] exist nor whether any such other convictions would interfere with eligibility"); *Advisory Opinions*, FLA. DIV. OF ELECTIONS, https://dos.myflorida.com/elections/laws-rules/advisory-opinions/ ("An advisory opinion represents the Division's interpretation of the law applicable *at the time the opinion is issued[.]*").

offers little to no practical guidance on the matter.

**B.** **_Thompson_ Does Not Support Defendant's Argument that the Application's Hyperlink Provides Sufficient Notice to Applicants as a Matter of Law.**

Defendant concedes that multiple eligibility requirements apply to returning citizens and that the Application's text does not specify each of these requirements. But Defendant asserts that Florida need not "detail *all* the eligibility requirements" for returning citizens. *See, e.g.*, MTD at 3.[7] Instead, Defendant reads *Thompson* to require only that a state "provide[] a general description of eligibility criteria for convicted felons and a link to a state website where more detailed explanations for determining eligibility can be viewed." *Id.*[8] But Defendant fails to offer what he says is lacking—"some limiting principle to buttress [this] argument," *id.* at 13—and instead suggests that an application containing any level of generality and a hyperlink would suffice. Defendant's argument fails for at least four reasons.

_____

[7] Defendant's website—upon which he relies, as discussed *infra*—similarly states that "eligibility *requirements* to restore voting rights are found in the Florida Constitution and Florida Statutes." *See Constitutional Amendment 4/Felon Voting Rights,* FLA. DIV. OF ELECTIONS, https://www.dos.myflorida.com/elections/for-voters/voter-registration/constitutional-amendment-4felon-voting-rights/.

[8] *See also* MTD at 10 ("Florida's Application fully complies with the requirements of the NVRA by informing persons previously convicted of felonies that they *might* not be eligible to vote unless certain conditions are met and providing a link to a state website where prospective applicants can" find answers to questions about voter eligibility.).

*First*, nothing in *Thompson* suggests that a "general description" of eligibility "criteria"—with or without an accompanying link—satisfies the NVRA. The statute expressly requires states to "specif[y] each eligibility requirement" on voter-registration applications. *See supra* at 7 n.3. As explained above, the application at issue in *Thompson* stated that applicants "must not 'have been convicted of a disqualifying felony'" unless their rights had been restored. 505 F. Supp. 3d at 1253. The *Thompson* plaintiffs argued that the NVRA required the Alabama form to list each of those Alabama felonies, but the Eleventh Circuit rejected this argument and held that "a specification of a qualification—disqualifying felony—which generally refers to particular crimes" was "specific enough." 65 F.4th at 1308 (quoting 505 F. Supp. 3d at 1271). In other words, the Eleventh Circuit held that the text of Alabama's form provides notice that the crime of conviction (*i.e.*, a "disqualifying felony") affects a returning citizen's eligibility. This "specifies" the eligibility requirement, even if it uses a "general" term.

Here, by contrast, Defendant concedes that the Application's phrase "right to vote is restored" embeds *multiple*, unstated eligibility requirements; he simply argues that Florida need not "detail *all* [those] requirements." MTD at 3. The Application's vague references to those "convicted of a felony" whose "right to vote [has been] restored" do not specify anything about the different classes of felonies, which are subject to different eligibility requirements depending on the terms of sentence

15

and state of conviction. *See generally* Compl. ¶¶ 10, 168-179. The upshot is that the Application presents a tautology: returning citizens are eligible to vote if they are eligible. Nothing in *Thompson* suggests that this type of "general description" satisfies the NVRA's mandate to "specify" "each" eligibility requirement.

*Second*, *Thompson* does not hold that a state necessarily satisfies its obligation under the NVRA by supplementing its application with a hyperlink to a state website that can lead—if a user finds and clicks the correct link on that page—to a second webpage that allegedly specifies the eligibility requirements. Determining NVRA compliance is a fact-specific inquiry, and neither the statute nor *Thompson* set out a specific rule about the requirements in each state. The Eleventh Circuit held only that "Alabama's mail-in voting form has provided sufficient notice by informing registrants that persons convicted of disqualifying felonies are not eligible to vote and providing an easily accessible link whereby voters convicted of felonies can determine their voter eligibility." *Thompson*, 65 F.4th at 1309.

The Eleventh Circuit did not—and could not—hold that a general description plus a hyperlink suffices in every case. Because the text of the form in *Thompson* specified the one eligibility criterion relevant to the plaintiffs' NVRA claim in that case—having been convicted of a disqualifying felony—*Thompson* does not address whether a state may forgo including the necessary information on the form itself by providing a link to the information that the NVRA requires. *See id.* at 1308 (quoting

505 F. Supp. 3d at 1271) (holding that "a specification of a qualification—disqualifying felony—which generally refers to particular crimes" was "specific enough" to satisfy NVRA).

*Third*, *Thompson* and this case differ on the facts and in their procedural posture. As to the facts, the hyperlink in the Alabama application appears immediately next to language about individuals who are "barred from voting by reason of a disqualifying felony conviction," and the text clearly indicates that the link contains a list of those disqualifying felonies. *Thompson*, 505 F. Supp. 3d at 1271. There was no dispute: anyone reading the Alabama application could inform themselves about which Alabama felonies were disqualifying by navigating to the link.

Here, by contrast, Defendant acknowledges that the hyperlink on the Application is a "few lines" below the statement about felony convictions, under a general heading labeled "Questions?," and below another hyperlink to "a list of county Supervisors of Elections offices." MTD at 9. To reach the actual webpage upon which Defendant relies, a prospective voter must visit the "second link" that appears on the Application, and then find and click yet another link under a subheading. *Id.* Neither the hyperlink on the Application nor the language surrounding it provide any hint that there are multiple eligibility requirements for different groups of returning citizens; that the website will provide any information on that issue (let alone complete information); or that one must navigate to still another webpage on that website to

obtain the relevant information. *Thompson* certainly does not address the sufficiency of Florida's link-to-a-link scheme. And even assuming applicants can successfully complete this cyber-scavenger hunt, *Thompson* does not address the adequacy of the information that the ultimate webpage contains.

To account for this discrepancy, Defendant effectively argues that a voter-registration form "include[s]" every statement contained in every subpage of every website that is hyperlinked on the application. But under that interpretation, a voter-registration form would comply with the NVRA so long as it said "you must be eligible to vote" and included a hyperlink to Florida statutes. Plainly, Defendant's argument contravenes the NVRA's text. If Congress intended to require only a vague, bare-bones disclosure—or a hyperlink to a website containing additional hyperlinks, even when (as in Florida) eligibility requirements differ for differently situated people—Congress would not have required states to "specify" "each" voter-eligibility requirement on mail-in voter-registration applications. *See United States v. McLymont*, 45 F.3d 400, 401 (11th Cir. 1995) ("In interpreting the language of the statute, this Court must assume that Congress used the words of the statute as they are commonly and ordinarily understood and must construe the statute so each of its provisions is given full effect.").

As to the procedural posture, the Eleventh Circuit determined that the hyperlink on Alabama's application is "easily accessible" only upon review of a full

summary-judgment record. *Thompson*, 65 F.4th at 1309. Here, Defendant asks the Court to dismiss this case as a matter of law and without the benefit of *any* discovery record. As *Thompson* explained, the NVRA's "specifies" requirement "is a notice statute enacted for the convenience of voting registrants." *Id.* Courts commonly consider whether information adequately puts a person on notice to be a question of fact. *See, e.g.*, *PB Prop. Mgmt. v. Goodman Mfg. Co., L.P.*, No. 3:12-cv-1366-HES-JBT, 2014 WL 12640371, at *3 n.1 (M.D. Fla. Aug. 14, 2014) ("[S]ufficiency of notice is a question of fact and is not to be determined at the motion to dismiss stage."); *MTM Television Distrib. Grp. v. Pub. Int. Corp.*, No. 91-1519-CIV-T 17C, 1992 WL 80625, at *2 (M.D. Fla. Mar. 24, 1992) ("Any challenge to the sufficiency of the notice of termination involves questions of fact which are not properly determined on a 12(b)(6) motion to dismiss."). As described above, there are a series of open factual questions here that make this case inappropriate for dismissal, including the ultimate question: whether Florida's Application and hyperlink provide adequate notice to applicants of its complex voter-eligibility requirements for returning citizens.

*Fourth*, Defendant's argument conflicts with the context and stated purpose of the NVRA. *See Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1267 (11th Cir. 2006) (quoting *Dolan v. U.S. Postal Serv.*, 126 S. Ct. 1252, 1257 (2006)) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or

authorities that inform the analysis."). In enacting the NVRA, Congress intended to "increase the number of eligible citizens who register to vote," "enhance[] the participation of eligible citizens," protect the integrity of the electoral process, and ensure the accuracy of voter-registration rolls. 52 U.S.C. § 20501(b).

The Application's bare-bones disclosure does not serve these goals. Florida does not improve election integrity or access to the ballot in federal elections by failing to inform those convicted of statutorily enumerated murder or felony sexual offenses in Florida that they are not eligible to vote until their rights are restored through clemency; those convicted of other felonies in Florida that they cannot vote until they have completed all terms of their sentence, including probation, parole, community custody and payment of certain LFOs; or those with out-of-state convictions that their eligibility depends on the rules of the state in which they were convicted.

This informational keep-away also makes it significantly more likely that returning citizens—along with Plaintiffs' members and volunteers assisting them with voter registration—will make good-faith mistakes about voter eligibility. The available information suggests that many returning citizens are misinformed and confused about their eligibility status. *See* Compl. ¶¶ 121-134. This is exactly what the NVRA's drafters were concerned about when they decided to require states to "specify" each eligibility requirement. *See* S. Rep. No. 102-60, at 23 (1991) ("It is

important . . . that each applicant be advised of the voting requirements and the need to decline to register if he or she does not meet the requirements. The bill provides that all registration requirements should be set forth in the application to register to vote so that they will be readily available for each applicant to review during the application process."). Indeed, applicants are asked to affirm their eligibility under penalty of perjury.

### C. The Complaint Plausibly Alleges that the Application Fails to Inform Potential Voters of Each Eligibility Requirement.

While the Eleventh Circuit in *Thompson* ruled that the Alabama state mail-in form adequately "specified" the eligibility requirement at issue, it did not consider the separate requirement that a registration form "inform applicants . . . of . . . voter eligibility requirements."[9] The Complaint alleges that the Application violates the NVRA's "inform" requirement in addition to the "specify" requirement. Compl. ¶ 3. And the Complaint plausibly alleges that the Application fails to "inform" applicants of Florida's voter-eligibility requirements because the Application does not adequately convey information about the requirements for Florida residents with felony convictions.

---

[9] *See supra* at 7 n.4.

Moreover, whether the Application "inform[s]" applicants of Florida's eligibility requirements—*i.e.*, actually "communicates knowledge"[10]—is another question of fact that cannot be resolved on a motion to dismiss. The Complaint plausibly pleads that many applicants are confused and misinformed about the eligibility rules. *See* Compl. ¶¶ 121-134. Whether a person convicted of a felony (who does not already know the specific requirements applicable to different types of offenses, sentences, and states of conviction) will be informed of Florida's eligibility requirements after reading the Application cannot be determined without discovery regarding how actual applicants understand, or would likely understand, the language on the form. Those questions can only be resolved after factfinding. *Cf. Urena v. Biro Mfg. Co.*, 114 F.3d 359, 366 (2d Cir. 1997) ("The adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment."); *Ayer v. United States*, 721 F. Supp. 1395, 1396 (D. Me. 1989), *aff'd*, 902 F.2d 1038 (1st Cir. 1990) (" [A]

---

[10] Like "specify," "inform" is not defined by the NVRA. *See* 52 U.S.C. § 20502. "Inform" means "to communicate knowledge to." *Inform*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/inform. To "communicate" is to "convey knowledge of or information about," *Communicate*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/communicate, and to "convey" is "to cause to pass from one place or person to another," *Convey*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/convey. Thus, a voter-registration form cannot "inform" applicants of eligibility requirements unless that knowledge in fact "pass[es] from one . . . person to another."

claim based on a failure to warn falls into a different category, implicating questions of fact rather than statutory interpretation"); *Garden Meadow, Inc. v. Smart Solar, Inc.*, 24 F. Supp. 3d 1201, 1212 (M.D. Fla. 2014) ("[T]he likelihood of confusion is generally a question of fact[.]").

### D.   Plaintiffs Propose a Straightforward and Workable Interpretation of the NVRA.

Contrary to Defendant's claims, Plaintiffs' arguments would not lead to "absurd results." MTD at 13. And the remedy that Plaintiffs seek is simple and workable.

*First*, in contrast to *Thompson*, Plaintiffs do not contend that the NVRA requires the Application to list each disqualifying felony, or even each felony that qualifies as "murder" or a "felony sexual offense" (for which rights are not automatically restored upon completion of all terms of sentence). *See Thompson*, 65 F.4th at 1308. Accordingly, Plaintiffs do not request an exceedingly long form that would constitute an "unworkable" remedy. Plaintiffs request only that the Application inform applicants about the different eligibility requirements that apply to different classes of returning citizens. *See* Compl. at 44-45 (Prayer for Relief). As one of the many alternatives that Plaintiffs detailed in the letter they sent to Defendant pursuant to the NVRA's 90-day notice provision, *see* Compl. ¶ 78, Plaintiffs explained that Defendant could bring the Application into compliance with the NVRA by including a half-page addendum with a few bullet points explaining the eligibility requirements. *See* Compl., Ex. 2 at 7-9. This is a far cry from the "monstrous" addendum that the

Eleventh Circuit found unworkable in *Thompson*. 65 F.4th at 1308.

*Second*, Plaintiffs do not demand an "exhaustive explanation of every legal particular underlying each eligibility requirement," as Defendant contends. MTD at 8, 13-15. Under a plain reading of the NVRA, an application form must "state in full and explicit terms"—and adequately inform applicants of—*each* eligibility requirement. *See supra* at I.A. Here, as Defendant's motion acknowledges, the Complaint plausibly alleges that Florida's eligibility scheme establishes different eligibility requirements for different groups of returning citizens, but the Application says *nothing* to inform applicants about those specific requirements. *See id.*

Defendant argues that "citizenship" and "residence" are capacious concepts and that Plaintiffs' theory would render the Application deficient as to those requirements as well. MTD at 11-14. But as Defendant concedes and common sense dictates, U.S. citizenship and Florida residence are both properly understood as single eligibility requirements in Florida's voter-eligibility scheme. *See id.* at 11 (the Application "specifies four discrete eligibility requirements," including "U.S. citizenship" and "Florida residence"). Plaintiffs' theory is not that an application form must resolve every possible question that could arise about whether an individual applicant satisfies a particular eligibility requirement. Instead, it is that the form adheres to the NVRA's plain text by specifying what the eligibility requirements are. By stating that a registrant "must be . . . a U.S. citizen" and "a Florida resident," the

Application adequately "specif[ies]" and "inform[s]" applicants as to those eligibility requirements.

By contrast, the language in the Application indicating that those convicted of felonies may not vote until their "right to vote is restored" does not state any eligibility requirement, but merely signals that there *are* eligibility requirements for people with felony convictions. This language is particularly misleading and uninformative in the context of Florida's complex eligibility scheme, wherein the restoration of rights entails vastly different things for different groups of returning citizens. To offer just one example, applicants with certain Florida convictions must pay off all LFOs as a precondition to eligibility, but the same is not necessarily true for applicants with convictions from other states that do not impose a similar requirement for voting-rights restoration.

*Third*, Defendant erroneously argues that Plaintiffs demand a "Goldilocks" voter-registration form that provides "just the right amount" of information—less than the previously invalidated 2019 form and more than the current Application. MTD at 12 (emphasis omitted). Defendant misconstrues Plaintiffs' claim and their earlier challenge to the 2019 form. Plaintiffs have never claimed that the NVRA dictates particular language for a voter-registration application. Rather, the NVRA requires that states specify and inform applicants of voter eligibility requirements. Florida's form fails to do that.

Moreover, as the Complaint explains, the 2019 challenge did not turn on whether the form provided too much information to applicants. Rather, that NVRA claim concerned (1) how much information applicants were required to disclose, (2) the impossibility for whole classes of returning citizens to check a box that accurately captured their status, and (3) the form's failure to inform applicants of the rules for those with out-of-state or federal convictions. Compl. ¶ 101. Plaintiffs have never challenged a Florida voter-registration form for providing too much information about eligibility requirements. Indeed, as the NVRA's legislative history makes clear, providing more eligibility information on a voter-registration form goes hand-in-hand with requiring applicants to disclose less. *See* H.R. REP. NO. 103-9, at 7-8 (1993) ("Since some of the reasons for declining to register to vote may involve matters of personal privacy, such as ineligibility under State law due to . . . a criminal conviction, an individual who declines to register to vote shall not be questioned as to the reasons for such action."); S. REP. NO. 103-6, at 24 (1993) (same).

Specifying and informing applicants of each eligibility requirement and limiting the disclosures required of applicants serve the same goal of the NVRA: encouraging voter registration by permitting voters to determine their eligibility privately and accurately.

II.     **Plaintiffs' Letter to Defendant Satisfies the NVRA's Notice
        Requirements.**

Plaintiffs' January 13, 2023 letter to Defendant provided proper notice under
52 U.S.C. § 20510(b)(1), and Defendant's argument that Plaintiffs lack statutory
standing is meritless.

The plain language of Section 20510(b)(1) requires only that a "person who is
aggrieved by a violation" of the NVRA provide to the State's chief election official
"written notice of the [NVRA] *violation*." *See id.* The very first sentence of Plaintiffs'
January 13, 2023, letter to Defendant reads: "Pursuant to 52 U.S.C. § 20510(b), we
write . . . to formally notify you that Florida's uniform *statewide voter registration
application violates the National Voter Registration Act of 1993*." *See* Compl., Ex.
2 at 2. And as Defendant concedes, "[t]he letter explains at length why Plaintiffs
believe Florida's Application violates [the] NVRA by not adequately informing ap-
plicants—in particular, persons previously convicted of felonies—of voter eligibility
requirements." MTD at 16.

That concession decides the issue. Defendant admits that he was on notice of
the alleged NVRA violations and, as numerous courts have held, that is all that Sec-
tion 20510(b)(1) requires. *See, e.g.*, *Green v. Bell*, No. 3:21-cv-00493-RJC-DCK,
2023 WL 2572210, at *3 (W.D.N.C. Mar. 20, 2023) ("[T]he Plaintiffs' pre-suit notice
announces a violation of the NVRA, so it satisfies the statute's notice requirement.");
*Ga. State Conf. of NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1334 (N.D. Ga. 2012)

(finding that plaintiffs satisfied the NVRA's notice requirement by "set[ting] out" the "general proposition" that the state was "not complying with the mandates of the NVRA"); *see also Scott v. Schedler*, 771 F.3d 831, 836 (5th Cir. 2014) (quoting *Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997)) (the purpose of the NVRA's notice requirement is to "provide states . . . an opportunity to attempt compliance before facing litigation"). Defendant never addresses those cases.

Unable to contest this basic point, Defendant pivots to an argument that no court has ever embraced and which finds no support in the NVRA's text—that an NVRA notice letter is defective if it omits "a specific threat to sue." MTD at 16-17 (insisting on magic words such as "we intend to commence litigation"). Defendant directs the focus to *dicta* in two cases that turned on notice issues not relevant here—whether the plaintiff notified the correct official, *Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 457 (M.D. Pa. 2019), or whether the notice adequately identified the documents plaintiffs sought in the litigation, *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1348 (N.D. Ga. 2016). Neither *Boockvar* nor *Project Vote* held the notice deficient because it omitted an explicit threat to sue.[11]

---

[11] Even if the NVRA did require notice of an intention to sue, Plaintiffs' letter provided adequate notice by citing, in the first sentence, Section 20510(b), which is entitled "Private right of action." Compl., Ex. 2 at 2. Defendant was apparently

The Court should reject Defendant's attempt to graft a novel "magic words" requirement on to the text of the NVRA's notice provision and deny his motion to dismiss for want of standing under the NVRA.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to dismiss.

---

aware of this provision—he responded to the letter on the 89th day of the 90-day period during which a plaintiff must wait to bring suit. Compl. ¶ 78.

Respectfully submitted this 1st day of June, 2023,

*/s/ Andrew Frackman*

Andrew Frackman*
William Pollak*
Colleen Powers*
Kevin Koai*
**O'Melveny & Myers LLP**
7 Times Square
New York, NY 10036
(212) 326-2000
afrackman@omm.com
wpollak@omm.com
cpowers@omm.com
kkoai@omm.com

Brian P. Quinn*
Patrick Jones*
Emily Murphy*
**O'Melveny & Myers LLP**
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
bquinn@omm.com
pjones@omm.com
emurphy@omm.com

Caroline A. McNamara (FBN 1038312)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida, Inc.**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org
cmcnamara@aclufl.org

Nicholas L.V. Warren (FBN 1019018)
**ACLU Foundation of Florida. Inc.**
336 East College Avenue, Suite 203

Eliza Sweren-Becker*
Patrick A. Berry*
Sara D. Carter*
Sean Morales-Doyle**
**Brennan Center for Justice
at NYU School of Law**
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
sweren-beckere@brennan.law.nyu.edu
berryp@brennan.law.nyu.edu
carters@brennan.law.nyu.edu
morales-doyles@brennan.law.nyu.edu

Leah C. Aden*
John S. Cusick*
Victor Genecin*
**NAACP Legal Defense and
Educational Fund, Inc.**
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
jcusick@naacpldf.org
vgenecin@naacpldf.org

Julie A. Ebenstein (FBN 91033)
Jonathan Topaz**
Casey Smith**
Sophia Lin Lakin**
**American Civil Liberties Union, Inc.**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
jebenstein@aclu.org
jtopaz@aclu.org

Tallahassee, FL 32301                          csmith@aclu.org
(786) 363-1769                                 slakin@aclu.org
nwarren@aclufl.org

*Admitted pro hac vice*
**Pro hac vice application pending*

*Counsel for Plaintiffs*

## LOCAL RULE 7.1(F) CERTIFICATION

I certify that this memorandum contains 6,695 words, excluding the case style and certifications; and it complies with the size and font requirements in the local rules.

*/s/ Andrew Frackman*
Andrew Frackman

## CERTIFICATE OF SERVICE

I certify that on June 1, 2023, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

*/s/ Andrew Frackman*
Andrew Frackman