## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**LEAGUE OF WOMEN VOTERS OF**
**FLORIDA, INC., et al.,**

      **Plaintiffs,**

**v.**                                    **Case No. 4:23-cv-165-AW-MAF**

**CORD BYRD, in his official capacity as**
**Florida Secretary of State,**

      **Defendant.**

_____/

## ORDER GRANTING MOTION TO DISMISS

Under the Florida Constitution, "[n]o person convicted of a felony . . . shall be qualified to vote . . . until restoration of civil rights." Fla. Const. art. VI, § 4(a); *see also* Fla. Stat. § 97.041(2)(b). The state's mail-in voter registration application accurately relays that fact: it says convicted felons "cannot register until [their] right to vote is restored." ECF No. 1-1 at 2. And it asks each applicant to "affirm that I am not a convicted felon, or if I am, my right to vote has been restored." *Id.*

Plaintiffs—three nonprofit organizations that assist citizens with voter registration—contend the mail-in application must do more. In their view, the National Voter Registration Act requires the application to also describe the various ways felons can go about having their rights restored. They sued Florida's Secretary of State seeking declaratory relief and an injunction precluding use of Florida's application. ECF No. 1 (Compl.).

The Secretary moved to dismiss, ECF No. 24 (MTD), and Plaintiffs responded in opposition, ECF No. 29 (Resp.). After a hearing, and having carefully considered the parties' arguments, I now grant the motion.

## I.

First, the Secretary contends that Plaintiffs did not satisfy the NVRA's presuit notice requirement and that I must dismiss on that basis.[1] Under the NVRA, "[a] person who is aggrieved by a violation . . . may provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). The aggrieved person can then sue "[i]f the violation is not corrected within 90 days." *Id*. § 20510(b)(2). Here, Plaintiffs provided written notice of a violation, waited 90 days, and then sued. *See* ECF No. 1-2 (notice letter).

---

[1] The Secretary initially argued Plaintiffs lack standing because of inadequate presuit notice, MTD at 13-17, but he properly conceded at the hearing that NVRA notice is not jurisdictional. *See Santos-Zacaria v. Garland*, 143 S. Ct. 1103, 1112 (2023) ("We treat a rule as jurisdictional only if Congress clearly states that it is." (cleaned up)); *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 127-28 & n.4 (2014). The Secretary does not otherwise contest Plaintiffs' standing, but I have independently considered it. *See Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc). Plaintiffs allege with sufficient specificity that they divert resources from other projects to help felon voting-applicants determine eligibility—resources they would not divert if Florida used a more detailed application. Compl. ¶¶ 36-45 (League of Women Voters); *id*. ¶¶ 58-66 (Florida NAACP). That is enough to support standing at this stage. *See Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1114-15 (11th Cir. 2022).

The Secretary concedes the letter notified him of the claimed violation. MTD at 16. And he is the State's "chief election officer." Fla. Stat. § 97.012. His argument is that the letter was deficient because it did not explicitly threaten litigation. MTD at 16-17. I cannot agree.

The statute does not require explicit "I plan to sue" language. It requires notice of an alleged violation and an opportunity to cure. The Secretary had that notice and that opportunity. Moreover, even if the statute required an actual threat of litigation, the letter gave one. The letter said Plaintiffs wrote "[p]ursuant to 52 U.S.C. § 20510(b)"—the very provision authorizing a private action after presuit notice. ECF No. 1-2 at 2. Plaintiffs did all that was required, and the notice letter offers no basis to dismiss.

## II.

Turning to the merits, the question is whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As explained below, Plaintiffs have not stated any plausible claim.

"The NVRA requires States to provide simplified systems for registering to vote." *Young v. Fordice*, 520 U.S. 273, 275 (1997). States must "inform" applicants of all voter-eligibility requirements, 52 U.S.C. § 20507(a)(5)(A), and states' mail-in

applications must "include a statement that . . . specifies each eligibility requirement (including citizenship)," *id.* § 20508(b)(2)(A).

Plaintiffs contend that Florida's mail-in form does not inform of or specify each eligibility requirement for felons. Compl. ¶¶ 3, 188-192. The application (which is attached to the complaint (ECF No. 1-1) and properly considered at this stage) says this:

**To Register in Florida, you must be:**
- a U.S. citizen,
- a Florida resident,
- at least 18 years old (you may pre-register at 16 or 17, but cannot vote until you are 18).

If you have been convicted of a felony, or if a court has found you to be mentally incapacitated as to your right to vote, you cannot register until your right to vote is restored.

Plaintiffs acknowledged at the hearing that this is correct. All voters indeed must be Florida residents, United States citizens, and at least 18 years old. Fla. Stat. § 97.041(1)(a). And those convicted of felonies indeed must have their right to vote restored. *Id.* § 97.041(2)(b). Those are the eligibility requirements, and each requirement is specified on the application form.

Plaintiffs nonetheless maintain that the NVRA requires more detail, namely that the form specify each *method* of voting-rights restoration. As they explain, Florida offers different convicted felons different pathways to restoration. Many have their rights restored automatically upon completing all the terms of their

sentences. *See* Fla. Const. art. VI, § 4(a). Those convicted of murder or sex offenses need executive clemency, *id.* § 4(b), as do those who have not completed their sentences.[2] But completing a sentence or obtaining clemency are not themselves voter eligibility requirements. They are means by which one may have his rights restored. The restoration of rights remains the eligibility requirement for felons. And that requirement, as Plaintiffs acknowledge, is included on the form they challenge. That is enough to doom Plaintiffs' challenge.

Seeking to avoid this fate, Plaintiffs reimagine the term "eligibility requirement," claiming it does not include restoration of rights generally but that instead there are multiple, different "eligibility requirements for people with felony convictions." Resp. at 25; *see also id.* at 7 (contending that Florida's application "does not specify or inform applicants that the eligibility requirements differ depending upon a returning citizen's class of offense, state of conviction, and

---

[2] Plaintiffs contend one reason the application is deficient is because it does not "[s]pecify that the voting rights of returning citizens convicted of felonies in states other than Florida are restored according to the law of the convicting state." Compl. ¶ 10; *see also* Resp. at 15-16. It is unclear whether this is an accurate statement of Florida law; the constitution provides (with exceptions for murder and sex offenses), that "*any* disqualification from voting arising from a felony conviction shall terminate and voting rights shall be restored upon completion of all terms of sentence including parole or probation." Fla. Const. art. VI § 4(a) (emphasis added). It does not distinguish between convictions within and outside Florida. But regardless of whether Plaintiffs are correct about the operation of Florida law in this respect, the outcome is the same: there is no NVRA violation.

sentence received and served"); *id*. at 9 (faulting application "for failing to specify or inform applicants of the multiple eligibility requirements for returning citizens"). They say the application's phrase "until your right to vote is restored" cannot be the eligibility requirement because that would "present a tautology: returning citizens are eligible to vote if they are eligible." Resp. at 16. But the rule is not that felons are eligible if they are eligible; the rule is that felons are eligible only if they have had their rights restored. Restoration (however it is had) is the eligibility requirement. This is no tautology.

Plaintiffs' contrary argument cannot survive scrutiny. As an initial matter, Plaintiffs never say precisely how many separate "eligibility requirements" fall in the felon category. They offer instead that "in the context of Florida's complex eligibility scheme, . . . the restoration of rights entails vastly different things for different groups of returning citizens." *Id.* at 25. They present, as "just one example," the fact that "applicants with certain Florida convictions must pay off all [legal financial obligations] as a precondition to eligibility, [while] the same is not necessarily true for applicants with convictions from other states that do not impose a similar requirement for voting-rights restoration." *Id.* It is true that "preconditions" regarding payment obligations may vary from person to person, but that does not mean payment is itself an independent "eligibility requirement" for NVRA purposes. Many individual applicants face individual "preconditions" to registration. For

6

example, those with Florida murder convictions must secure "the approval of two members of the cabinet" (plus the Governor), Fla. Const. art. IV, § 8(a); *see also id.* art. IV, § 4(a), but that does not transform approval of two cabinet members into an eligibility requirement that must be listed on the voter form.

Obviously, if the NVRA required applications to catalog every potential "precondition to eligibility," Florida's one-page, front-and-back application form would explode into something hopelessly cumbersome, counter to the NVRA's goal of promoting convenient registration. The federal application, too, would become unrecognizable. (As explained below, the same "specif[y] each eligibility requirement" provision that binds Florida also binds the Election Assistance Commission, which must create a national form. 52 U.S.C. § 20505(a)(1); *id.* § 20508(a)(2), (b)(2).) In a similar case, the Eleventh Circuit rejected the argument that the NVRA required Alabama's application to list all disqualifying felonies under Alabama law. *Thompson v. Alabama*, 65 F.4th 1288, 1308 (11th Cir. 2023). The Court noted that accepting Plaintiffs' position would result in a registration application "of monstrous size." *Id.*; *accord id.* (noting that Plaintiffs "propose an absurd, unworkable, and internally inconsistent interpretation of § 20508(b)(2)(A)").

Plaintiffs insist they do not seek an expansive application form, and they resist any comparison to *Thompson*. Resp. at 14-19. They even acknowledge (correctly)

that the NVRA does not require "an 'exhaustive explanation of every legal particular underlying each eligibility requirement.'" *Id.* at 24 (quoting MTD at 8, 13-15). But they offer no limiting principle for their position. Without showing everything that counts as an "eligibility requirement," they can never say exhaustively what *is* required. (Recall that the NVRA requires that the application "specifies *each* eligibility requirement." 52 U.S.C. § 20508(b)(2)(A) (emphasis added).) Why, for example, would the application's saying an applicant "must be . . . a U.S. citizen" do more than—as Plaintiffs put it—"merely signal[] that there *are* eligibility requirements" relating to citizenship? Resp. at 2. Should the application not specify that the citizenship requirement "entails vastly different things for different groups"? *Id.* at 25.[3] Or how could the application offer less than a complete explanation of all preconditions to legal residency—a concept that is not always uncomplicated? *Cf.* Fla. Stat. § 97.041(1)(a)(3).[4]

---

[3] Some have citizenship by birth, *see, e.g.,* 8 U.S.C. § 1431, some are born noncitizens and subsequently naturalized, sometimes after lengthy residency periods, *id.* § 1427(a), sometimes after military service, *id.* § 1439, or after "extraordinary contributions to national security," *id.* § 1427(f). Citizenship is not always permanent, though; it can be lost or forfeited. *See, e.g., id.* § 1481.

[4] Voters establish Florida residency if they "fixed an abode [in Florida] with the present intention of making it their permanent home," which turns on a variety of idiosyncratic facts. *Walker v. Harris*, 398 So. 2d 955, 958-59 (Fla. 4th DCA 1981) (citation omitted); *cf.* Fla. Stat. § 196.015 (residency for tax purposes).

Plaintiffs' only answer is to say that "common sense dictates [that] U.S. citizenship and Florida residence are both properly understood as single eligibility requirements in Florida's voter-eligibility scheme." Resp. at 24. True enough. But it is equally true for the requirement that felons have their rights restored. Residence, citizenship, and restoration of rights for felons are all "properly understood as single eligibility requirements." *Cf. Thompson*, 65 F.4th at 1308 (noting inconsistency of Plaintiffs' position: "[I]f 'a catchall provision which generally refers to particular crimes is sufficiently specific to satisfy the requirement that the form 'specify' the qualification, then a specification of a qualification—disqualifying felony—which generally refers to particular crimes must also be specific enough.'" (quoting district court)).

The federal Election Assistance Commission, for what it is worth, likewise recognizes that restoration of rights—not the underlying steps leading to it—is the qualification to be specified. The NVRA requires that the EAC create a mail-in application that includes the same information as state-created applications. 52 U.S.C. § 20505(a)(1); *id.* § 20508(a)(2), (b)(2). (States may use their own registration forms "[i]n addition to accepting and using" the EAC form. *Id.* § 20505(a)(2).) The EAC's federal application requires applicants to swear or affirm that they "meet the eligibility requirements of [their] state," and it includes detailed state-by-state instructions. National Mail Voter Registration Form,

https://www.eac.gov/sites/default/files/eac_assets/1/6/Federal_Voter_Registration_

ENG.pdf (last accessed July 6, 2023).[5] Over and over, the form lists the requirement

that convicted felons have their rights restored without detailing the means by which

they can achieve that restoration.[6]

---

[5] The court can take judicial notice of this federal application, the authenticity of which Plaintiffs do not dispute. But with or without considering the federal application, the outcome would be the same. Plaintiffs have not stated a plausible NVRA claim.

[6] Consider the following examples from the EAC federal application:

- Alabama: "you must: . . . not have been convicted of a felony involving moral turpitude (or have had your civil and political rights restored)";

- Alaska: "you must: . . . not be a convicted felon (unless unconditionally discharged)";

- Arizona: "you must: . . . not have been convicted of treason or a felony (or have had your civil rights restored)";

- Idaho: "you must: . . . not have been convicted of a felony, and without having been restored to the rights of citizenship, or confined in prison on conviction of a criminal offense";

- Iowa: "you must: . . . not have been convicted of a felony or have had your rights restored";

- Mississippi: "you must: . . . have not been convicted of [a listed crime] or have had your rights restored as required by law";

- North Carolina: "you must: . . . have your rights of citizenship restored if you have been convicted of a felony";

- Utah: "you must: . . . not be convicted of treason or crime against the elective franchise, unless restored to civil rights";

- Virginia: "you must . . . not have been convicted of a felony, or have had your civil rights restored . . . ."

Plaintiffs acknowledged at the hearing that if Florida is violating the NVRA by using its state application, then the Federal Election Assistance Commission is violating the NVRA by using its federal application. Both Florida and the EAC are bound by the same statutory requirements for their respective applications, and both list the same eligibility criteria for Florida. This does not mean, of course, that Florida's application necessarily complies with the NVRA. And the Secretary does not defend Florida's application by just showing that the federal application has the same alleged defect. But the fact that Plaintiffs' argument would invalidate not only Florida's longstanding application but also the federal application highlights the breadth of Plaintiffs' position.

"Boiled down, § 20508(b)(2)(A) is a notice statute enacted for the convenience of voting registrants." *Thompson*, 65 F.4th at 1309. Florida's voter registration application complies with the statute by providing adequate notice. It lists all eligibility criteria, and the NVRA does not require it to include the additional information Plaintiffs wish it did. *Cf. id.* at 1296, 1308-09 (upholding Alabama's application, which listed "[n]ot have been convicted of a disqualifying felony [or] must have had your civil rights restored").[7] But even if more information were

---

[7] Unlike in *Thompson*, Plaintiffs here also rely on § 20507(a)(5)(A)'s "inform" provision. The NVRA does not define "inform." But to the extent § 20507(a)(5)(A) and § 20508(b)(2)(A) are two independent disclosure obligations, an application that "specifies" eligibility requirements also "inform[s]" about them.

required (and I conclude it is not), the form points applicants to additional sources. It includes contact information for each county's election supervisor. *See* ECF No. 1-1 at 2-3 ("Questions? Contact the Supervisor of Elections in your county:"). And the application includes a link to the Division of Elections' website. *Cf. Thompson*, 65 F.4th at 1309 ("Alabama's mail-in voting form has provided sufficient notice by informing registrants that persons convicted of disqualifying felonies are not eligible to vote and providing an easily accessible link whereby voters convicted of felonies can determine their voter eligibility." (note omitted)); *see also* ECF No. 1-1 at 2 (dos.myflorida.com/elections). That URL links to additional voting information, including a prominently featured link ("Amendment 4: Standards Governing Eligibility to Vote After a Felony Conviction") to the exact same information Plaintiffs want added to the mail-in form itself.[8] *Cf.* ECF No. 1-2 at 9. Plaintiffs fault Florida's choice of URL for not linking directly to the felony standards. Resp. at 17-18. As they recognize, however, the NVRA is a notice statute. *Id.* at 19-21. That the application's URL directs registrants to a page with broader voting information—

---

In any event, I need not decide whether § 20507(a)(5)(A) requires more detail than § 20508(b)(2)(A). Plaintiffs limited their NVRA challenge to the application itself, and as a matter of law, the application here both informs and specifies.

[8] The court can consider these links because the complaint and its attachments incorporate them. At any rate, Plaintiffs indicated at the hearing that they had no objection to my considering them at this stage.

rather than a page specific to felons alone—does not support an NVRA claim; it undermines one.

One final point. Plaintiffs suggest that any conclusion regarding their claim is premature because there is a fact issue about whether Floridians understand the application's eligibility statement. *Id.* at 22-23; *cf.* Compl. ¶¶ 111-122. Yet Plaintiffs conceded at the hearing that the inquiry is an objective one. The validity of their NVRA claim does not turn, then, on how some convicted felons might (or might not) be confused by the form. Moreover, Plaintiffs have not identified any authority suggesting that the form's NVRA compliance is anything other than a purely legal question. Thus, it appears no additional facts will make any difference. Nonetheless, Plaintiffs may move for leave to amend within the next 14 days.

## CONCLUSION

The Secretary's motion to dismiss (ECF No. 24) is GRANTED, and the complaint (ECF No. 1) is DISMISSED for failure to state a claim. Plaintiffs may move for leave to amend in the next 14 days. Absent such a motion, judgment will enter.

SO ORDERED on July 10, 2023.

s/ *Allen Winsor*
United States District Judge